UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-235-KKC

DANNY SIMPSON,                                                                          PLAINTIFF

v.                                          **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                         DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff Danny Simpson's Motion for Summary Judgment [R. 10] and Defendant Commissioner Astrue's Motion for Summary Judgment [R. 11]. For the reasons stated below, the Court hereby orders the Plaintiff's Motion for Summary Judgment GRANTED and the Defendant's Motion for Summary Judgment DENIED.

I.      **Factual and Procedural Background**

Plaintiff Danny Simpson alleges that he became disabled beginning February 21, 2004 (as amended). Simpson filed an application with the Social Security Administration on June 17, 2004 for Disability Insurance Benefits and Supplemental Security Income payments. This application was denied initially and on reconsideration, and again on May 15, 2006 by decision of Administrative Law Judge [hereinafter "ALJ"] Donald A. Rising. This adverse decision is now being challenged in this Court. Simpson also previously filed another application for Disability Insurance Benefits and Supplemental Security Income on November 14, 2001, alleging the same combination of impairments as is presently claimed, but with a disability onset date of June 1, 2001. This application was also denied initially and on reconsideration, and again on February 20, 2004, by decision of ALJ Barbara Perkins.

In his second social security disability hearing, that before ALJ Rising, Simpson claimed to suffer from a number of impairments, including coronary artery disease, hypertension, hyperlipidemia, psychological symptoms, carpal tunnel syndrome, and chronic knee, back, and arm pain. Simpson denied any work activity since 2001; in the past, he worked as a lumbar handler. For his heart condition, Simpson takes Nitroglycerin twice a week, along with other medications, such as Toprol, Lipitor, and Tricor. Simpson alleges chronic knee, back, and arm pain, due in part to a motor vehicle accident he was involved in. Simpson takes Ultram thrice a day for relief from this pain. He also denies the use of a back brace, cane, or TENS unit.

Simpson underwent stenting in 1999, as well as a cardiac catheterization and coronary angioplasty. Simpson was diagnosed with coronary artery disease and myocardial bridging [P]. After that time, Simpson was monitored by Drs. Moez Premji and Elias Dalloul for CAD, hypertension, and hyperlipidemia. After this, Simpson was monitored by Dr. Mubashir Qazi, who performed a second cardiac catheterization in 2001. Dr. Qazi recommended further evaluation and aggressive hypertensive management for Simpson if his chest pain persisted. On April 10, 2002, Dr. Qazi recommended that Simpson continue with symptom-limited activities and avoid heavy lifting. On October 25, 2002, Dr. Qazi supervised an evaluation of Simpson where Simpson complained of recurrent chest pain, though a stress echocardiogram was found to be normal.

On May 8, 2003, Dr. Premji reported that Simpson has anginal equivalent pain, fatigue, and weakness. Dr. Premji also stated that Simpson had class II-III cardiac disease, and is incapable of even low-stress jobs, although stress was not believed to contribute to Simpson's cardiac condition. Dr. Premji opined that Simpson had the functional limitations of standing or

walking less than two hours in an eight-hour day, sitting two hours in an eight-hour day, lifting and carrying less than ten pounds on a frequent basis, and avoiding exposure to environmental conditions. On August 21, 2003, Dr. Premji also issued an attending physician's statement of disability. On October 8, 2003, Dr. Khaled Saleh identified symptoms of chest pain, anginal equivalent pain and fatigue, and class I heart disease after examining Simpson on several occasions. Dr. Saleh stated that Simpson had functional limitations of sitting, standing, and walking less than two hours; lifting and carrying less than ten pounds on an occasional basis; and avoiding all exposure to environmental conditions; and opined that Simpson would be absent from work three times a month.

ALJ Perkins took this medical evidence into account in issuing Simpson's first adverse social security decision on February 20, 2004 that denied Simpson disability benefits. Though ALJ Perkins found that Simpson had a combination of severe impairments based on the evidence presented, she found that Simpson retained a sufficient residual functional capacity to perform work as an inspector/checker, clerk, or cashier. When Simpson subsequently brought the present social security disability application, he thus stated a disability onset date of February 21, 2004, one day after ALJ Perkins rendered her adverse decision. Thus, the medical evidence directly relevant to the matter before this Court is that compiled after the amended onset date of February 21, 2004. This medical evidence is discussed in detail below.

On January 1 and April 19, 2004, Simpson checked in for emergent treatment at Harlan Appalachian Regional Hospital and Daniel Boone Clinic, for a toothache and rectal pain, respectively. On April 29, 2004, Simpson presented to Dr. Premji without complaints. Dr. Premji noted that Simpson had missed several appointments, but his physical examination was

unremarkable. On September 30, 2004, Simpson presented to Dr. Jose Echeverria. During this visit, Simpson reported that he was "feeling fine," he had no significant complaints, his physical examination was unremarkable, and his echocardiogram showed normal left ventricle size and function.

On September 28, 2004 and May 9, 2005 physical residual functional capacity assessments about Simpson were completed by non-examining state agency physicians. The assessments stated that Simpson was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently, requires a medical hand-held assistive device (the second assessment did not include this particular requirement), is limited to sitting six hours in an eight-hour workday, can do no more than frequent climbing of ramps and stairs, and should avoid concentrated exposure to extreme conditions. The state physicians completed these assessments without reviewing examining physicians' statements.

On October 22, 2004, Dr. Qazi saw Simpson again. At this time, Simpson complained of chest pain, and Dr. Qazi noted the cardiac risk factors of hypertension and cholesterol. Dr. Qazi performed an exercise stress cardiolite study on November 5, 2004. This study was found to be abnormal, the baseline EKG was sinus rhythm, and with stress there was a "3-mm ST depression noted in the anferiolateral leads." There was no ischemia or scar, the stress test was normal, and Simpson reported that he was "doing fine." The echocardiogram reports traced mitrul regurgitation and trace tricuspid regurgitation with diastolic dysfunction. The physical exam was negative, the stress testing showed a left ventricular size and function, and Simpson's last cardiac catheterization revealed a patent stent. Simpson followed up with Dr. Qazi six months later, on April 13, 2005, where he reported to Dr. Qazi that he was walking one mile per day without

problems. Dr. Qazi noted that there were no signs of chest pain or shortness of breath. Simpson presented again to Dr. Qazi on August 12, 2005 without complaints.

On January 13, 2005, Simpson reported to Dr. Echeverria that he was "feeling fine," he had no significant complaints, his physical examination was unremarkable, and his echocardiogram showed normal left ventricle size and function. On March 9, 2005, Simpson was treated for sinusitis. On August 1, 2005, Simpson told Dr. Echeverria that he had stopped taking his medications. Dr. Echeverria reported that Simpson had no symptoms of chest pain or shortness of breath, and his physical examination was normal except for 1/4 edema in the extremities. On September 29, 2005, Simpson visited the hospital for emergent treatment due to left upper quadrant and epigastric pain. The physical examination and laboratory studies were unrevealing, and the EKG and telemetry revealed sinus rhythm. A diagnosis of acute coronary syndrome was ruled out, and Simpson was discharged with orders to undergo ultrasound studies of his liver and bladder. On October 13 and December 19, 2005, Dr. Echeverria saw Simpson again. Simpson's physical examinations on these occasions were benign, other than 1/4 edema in the extremities, and a stress test on October 27, 2005 was normal.

On October 18, 2005, Dr. Qazi submitted a cardiac residual functional capacity questionnaire. The diagnoses included coronary artery disease, stent to the RCA, hypertension, elevated cholesterol, and class IV and class C heart disease, as well as symptoms of chest pain, anginal equivalent pain, and palpitations. Dr. Qazi noted that Simpson had marked limitations. According to Dr. Qazi's questionnaire, Simpson is incapable of performing even low-stress jobs, and that his symptoms would often interfere with his attention and concentration. Further, according to Dr. Qazi, Simpson's sitting, standing, and walking would be limited to less than two

hours in an eight-hour workday; he would require unscheduled breaks every one to two hours; his legs needed to be elevated to forty-five degrees; his lifting and carrying are limited to ten pounds or less on an occasional basis; to avoid exposure to extremes; and that he would be absent from work more than three times per month.

On October 20, 2005, Dr. Echeverria also submitted a medical analysis of Simpson's ability to do work-related activities, similar to Dr. Qazi's questionnaire. In the analysis, Dr. Echeverria stated that Simpson's lifting and carrying is limited to ten pounds; his standing and walking is limited to fifteen to thirty minutes; that his sitting is limited to thirty minutes to one hour without interruption; that he can only do occasional climbing, crouching, or kneeling; that he should avoid pushing or pulling activities; and that he should avoid moving machinery, temperature extremes, and humidity. Dr. Echeverria also noted that Simpson tires very easily, that he has numbness in the legs, and that he experiences chest pain and shortness of breath if he exerts himself.

On February 1, 2006, Simpson submitted a statement declaring that he can never resume work, and that his daily activities included only brief walks to a neighbor's house. On March 17, 2006, Dr. Qazi saw Simpson again, where he complained of leg pain and intermittent chest pain, though he denied experiencing shortness of breath. Simpson's physical examination at this time revealed no remarkable clinical findings. At his administrative hearing before ALJ Rising, Simpson claimed that, due to his leg pain, he can only sit for thirty minutes before needing to elevate his legs, that he can only walk twenty-five yards without problems, and that he has right carpal tunnel syndrome that causes his hand to lock when he grasps objects. Simpson further testified that he requires help from his wife with his bathing and dressing, that his wife does the

dishes and laundry, and that his father-in-law performs the outdoor chores. Simpson also admitted that he helps vacuum the house and that he is able to drive "once in awhile." Simpson stated that he becomes very tired and feels pressure in his chest when he attempts to do activities.

ALJ Rising denied Simpson social security disability benefits and supplemental security income. ALJ Rising found that Simpson had the severe medical impairments of coronary artery disease, hypertension, and hyperlipidemia, but did not find them to be of listing-level severity. ALJ Rising explained that Simpson "failed to produce evidence showing that his objectively determined medical conditions are of such severity that they can reasonably be expected to give rise to the symptoms alleged." ALJ Rising's Opinion, at 4. ALJ Rising also rejected the October 2005 medical reports of Drs. Qazi and Echeverria, since he found the reports to be unsupported by substantial evidence and objective medical findings, and contradicted by substantial evidence to the contrary. ALJ Rising determined that Simpson retained the residual functional capacity to perform light work that affords a sit/stand option and requires no more than frequent handling or fingering; no more than occasional crouching and kneeling; no climbing of ladders, ropes, or scaffolds; and no exposure to pulmonary irritants, temperature extremes, or excessive humidity. ALJ Rising stated that "[a]bsent evidence of deterioration in the claimant's condition, I am bound by [ALJ] Perkins' findings of February 20, 2004 . . . ." ALJ Rising's Opinion, at 6. Assisted by the testimony of a vocational expert, ALJ Rising concluded that Simpson could still perform work as a mail clerk or an inspector, and that sufficient numbers of these jobs exist in the economy. Simpson was thus not found to be disabled within the meaning of the Social Security Act, and his claim for benefits was accordingly rejected. The Appeals Council denied Simpson's request for review, and Simpson then sought review before this Court. The

Commissioner has adopted ALJ Rising's opinion as its own.

**II.     Standard of Review**

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).  The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly.  *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**III.    Analysis**

In his challenge to ALJ Rising's denial of his application for Social Security Disability Benefits and Supplemental Security Income, Simpson raises two main arguments.  First of all, Simpson argues that ALJ Rising improperly rejected the October 2005 medical reports of Drs.

Qazi and Echeverria. In addition, Simpson argues that ALJ Rising's decision is not supported by substantial evidence. The appropriate remedy, Simpson concludes, is remanding the case back to the Social Security Administration for further proceedings.

**A.      Rejection of Drs. Qazi and Echeverria's Medical Opinions**

Simpson places great reliance on the October 2005 medical opinions provided by Drs. Qazi and Echeverria to support his claim of disability. These opinions, as discussed in detail above, provide diagnoses of the medical conditions that Simpson claims have caused him to become disabled, and set forth marked limitations on Simpson's ability to operate in a workplace. ALJ Rising, however, was not impressed with these opinions. ALJ Rising rejected these opinions, because, in his words, the opinions "lack support by way of substantial evidence. They are not supported by objective medical findings, are contradicted by substantial evidence to the contrary and are accorded only negligible weight . . . ." ALJ Rising's Opinion, at 6. Simpson contends that this constitutes reversible error, as the only evidence of record conflicting with Drs. Qazi and Echeverria's opinions came from medical opinions of state-agency physicians who did not personally examine Simpson and did not have access to any treating- or examining-source statement when they made their assessments. Simpson further contends that ALJ Rising failed to satisfy the procedural requirements of 20 C.F.R. § 404.1527(d) in rejecting Drs. Qazi and Echeveria's opinions because ALJ Rising failed to set forth a reasoned basis for the opinions' rejection. Instead, ALJ Rising "assumed the role of medical advisor" by interpreting the medical evidence himself and then rejecting the two opinions based on this interpretation. Plaintiff's Motion for Summary Judgment, at 14-15.

It is the responsibility of the Social Security Administration to determine whether a

disability claimant is actually disabled. 20 C.F.R. § 404.1527(e)(1). In making this determination, the Administration (acting through the ALJ) reviews medical opinions and sources for evidence about the nature and severity of a claimant's alleged impairments. *Id.* § 404.1527(e)(2). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments. *Id.* § 404.1527(a)(2). Medical sources refer to three different types of sources that provide evidence about a claimant's impairments: treating sources, nontreating sources, and nonexamining sources. *Id.* § 404.1502. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. *Id.* A nontreating source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant. *Id.* A nonexamining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case. *Id.*

When making a disability determination, the ALJ must evaluate every medical opinion it receives, regardless of type of medical source it comes from. *Id.* § 404.1527(d). More weight is to be given to opinions of treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." *Id.* at (d)(2). The ALJ must give an opinion of a treating source controlling weight in his disability determination if he finds the opinion "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* If the treating opinion is not given controlling weight, it must be evaluated according to other factors, such as length, nature, and extent of the treatment relationship; frequency of the examination; supportability; consistency; specialization of the source; and any other factors brought to the ALJ's attention. *Id.* at (2)-(6).

Drs. Qazi and Echeverria are treating sources, and their October 2005 medical opinions are therefore entitled to treating-source opinion weight. Dr. Qazi has examined and treated Simpson since 2001, and Dr. Echeverria has examined and treated Simpson since at least 2004. Several years' worth of medical attention by a particular physician surely is sufficient to constitute "an ongoing treatment relationship with the claimant." 20 C.F.R. § 404.1502. Moreover, the Commissioner does not appear to dispute the fact that Drs. Qazi and Echeverria should be accorded treating-source status, or that their opinions of October 2005 should be considered treating-source opinions. ALJ Rising was therefore required to give the opinions' conclusions controlling weight in his disability determination if he found them to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* § 404.1527(d)(2).

ALJ Rising relied on an examination of Simpson's treating record under Drs. Qazi and Echeverria to explain his decision to reject the October 2005 medical opinions as unsupported by objective medical evidence and contradicted by substantial evidence. ALJ Rising began by noting the conclusions of Drs. Qazi and Echeverria that Simpson was unable to sustain sedentary work. ALJ Rising then detailed a list of matters from these doctors' records that in his mind

contradicted the disability conclusions contained in the opinions.  Simpson's treatment record includes normal stress testing in 2005 and 2004, with normal ejection frame.  ALJ Rising's Opinion, at 6.  Dr. Qazi and Dr. Echeverria noted that Simpson was "doing fine" from a cardiovascular perspective.  Though Dr. Qazi noted that Simpson's cardiac symptoms were severe enough to interfere with his concentration, ALJ Rising points out that "the longitudinal treatment records are bereft of any significant and persistent complaints of chest pain, shortness of breath or other cardiac symptoms."  *Id.*  Additionally, ALJ Rising stated that though both doctors reported that Simpson was limited due to right carpal tunnel syndrome, there was no treatment evidence for such complaints.  *Id.*

Moreover, ALJ Rising also indicated an apparent discrepancy between Simpson's April 2005 admission of being able to walk one mile daily without problems, and Drs. Qazi's opinion that Simpson could walk no city blocks and Dr. Echeverria's opinion that Simpson could only walk fifteen to twenty minutes in an eight-hour workday.  ALJ Rising also notes that Dr. Qazi simultaneously indicated that Simpson would be incapable of performing even low-stress work while noting that stress played no role in bringing on Simpson's symptoms, that stress could only worsen the symptoms.  *Id.*

ALJ Rising's rationale for rejecting Drs. Qazi and Echeverria's medical opinions is similar to that utilized by the ALJ in *Martin v. Commissioner, Social Security Administration*, 61 Fed. Appx. 191 (6th Cir. 2003).  In *Martin*, the ALJ rejected treating-source medical opinions regarding the plaintiff's mental health.  To do so, "the ALJ disregarded the conclusions of Plaintiff's treating physicians and instead relied on his own interpretation of Plaintiff's GAF scores, and daily activity logs."  *Martin*, 61 Fed. Appx. at 200.  Specifically, the ALJ interpreted

the plaintiff's GAF scores to reach his own conclusion about the seriousness of the plaintiff's symptoms and as an indicator of non-disability. *Id.* at 199. The ALJ also relied on clinical observations of another physician and the plaintiff's own statements found in daily activity questionnaires. *Id.*

Moreover, the ALJ undertook his own evaluation of the treating physicians' treatment notes, clinical records, and statements to find what he considered contradictory evidence regarding the physicians' disability conclusions. *See, e.g., id.* at 197 ("[W]hile Plaintiff exhibited mood swings over the years[,] Dr. Haykal's notes indicate that she responded well to medication and . . . was showing signs of steady improvement."); *id.* ("The ALJ noted Dr. Haykal's opinion that Plaintiff satisfied the criteria for Affective Disorder . . . but discredited the same because 'it is significant that for several years . . . the [plaintiff] had engaged in a substantial gainful activity in a very mentally exacting job.'"); *id.* ("[T]he ALJ noted that Dr. Haykal's records failed to document any repeated episodes of deterioration or decompensation as testified to on deposition."); *id.* ("The ALJ found Dr. Haykal's numerous GAF notations and clinical observations 'plainly inconsistent with the chronic disabling mental illnesses that they opined to be present.'"). Based on this review of the plaintiff's treatment record, the ALJ rejected the physicians' opinions and found the plaintiff to not be disabled under the Social Security Act.

The Court of Appeals reversed the ALJ's denial of benefits. "In the absence of a medical opinion refuting or discrediting the treating physician, whose opinions are supported by other medical reports of record, the ALJ's own view of the GAF scores and Plaintiff's activity log do not constitute substantial evidence sufficient to overcome the deference owed to the conclusion

of Dr. Haykal." *Id.* at 200.[1] Since there was no actual refuting medical opinion at hand, the ALJ's basis for discrediting the treating-source opinions rested entirely on his own interpretation of the plaintiff's treatment notes, clinical records, and statements, which the Sixth Circuit found to be an impermissible basis for rejecting the opinions. "As we have long held, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Id.* (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)). Since the treating-source opinions were improperly rejected by the ALJ, the Court reversed and remanded the case to the district court for the plaintiff to be awarded the disability benefits he sought.[2]

The *Martin* ALJ's analysis in rejecting the treating source opinions is very similar to that employed by ALJ Rising in rejecting Drs. Qazi and Echeverria's October 2005 opinions. Both ALJs undertook their own analysis of the doctors' treatment records, daily activity logs, and recorded statements and observations to conclude that the doctors' conclusions are not supported by the doctors' findings. Although in *Martin*, the Court specifically took issue with the ALJ's re-examination of the plaintiff's GAF scores, something that did not occur in Simpson's case, the remainder of the *Martin* ALJ's analysis is analytically on point with ALJ Rising's analysis. *Compare* ALJ Rising's Opinion, at 6 (treatment record appears normal; doctors state that

---

[1] In *Martin*, the ALJ in fact did rely on another medical opinion, that of Dr. Covey, which was claimed to contradict the findings of those opinions rejected by the ALJ. The Court of Appeals however, held that Dr. Covey's opinion did not actually contradict the rejected medical opinions. Therefore, it "[did] not constitute substantial evidence sufficient to overcome the opinions of Plaintiff's treating physicians . . . ." *Martin*, 61 Fed. Appx. at 200.

[2] The Court reversed and ordered the awarding of disability benefits, rather than simply remanding for reconsideration by the ALJ, because it determined that substantial evidence did not support the ALJ's determination of non-disability once the treating-source opinions were given complete deference, and substantial evidence did exist in support of the plaintiff's disability. *Id.* at 201.

Simpson is "doing fine" on certain occasions; Simpson's earlier stated walking ability conflicts with opinions's stated walking ability; treatment records do not include certain types of symptoms; treatment records do not include treatment evidence for carpal tunnel syndrome; observations about role of stress inconsistent with conclusions about stressful employment), *with Martin*, 61 Fed. Appx. at 197 (treatment records showed signs of improvement; doctors stated that plaintiff responded well to medication; treatment records indicated that plaintiff could do mentally demanding work; records failed to show instances of symptoms testified to; clinical observations and GAF notations inconsistent with opinion's conclusions).

Moreover, in both the instant case and in *Martin*, the rejected opinions were "supported by other medical reports of record," *Martin*, 61 Fed. Appx. at 200.  Namely, in *Martin*, each of the rejected medical opinions supported the other's conclusions; the same goes for Simpson's case, where Drs. Qazi and Echeverria's opinions are mutually supportive.  Additionally, both cases can be considered situations involving "the absence of a medical opinion refuting or discrediting the treating physician," *id.*  In *Martin*, the Court held that another opinion relied on by the ALJ was not inconsistent with the conclusions of the rejected opinions.  In Simpson's case, there were arguably conflicting medical opinions from the non-examining state agency physicians.  However, it appears that ALJ Rising did not actually rely on these state agency opinions as evidence to discount the conclusions of Drs. Qazi and Echeverria, since he never once referred to them within his rationale for rejecting Drs. Qazi and Echeverria's opinions.  ALJ Rising instead relies entirely on the evidence discussed above, rather than any possibly conflicting evidence from other medical opinions.  As such, the rationale offered by ALJ Rising for rejecting the medical opinions is analogous with that in *Martin*, and demands a similar result

15

upon review by this Court. As in *Martin*, "the ALJ's own view of the GAF scores and Plaintiff's activity log do not constitute substantial evidence sufficient to overcome the deference owed to the conclusion of Dr. Haykal," *id.*, so in the instant case, ALJ Rising's own view of the doctors' treatment records, statements, and activity logs, do not constitute substantial evidence sufficient to overcome the deference owed to Drs. Qazi and Echeverria's conclusions.

Therefore, since ALJ Rising's particular rationale for dismissing Drs. Qazi and Echeverria's medical opinions must be rejected as inconsistent with the Court of Appeals' holding in *Martin*, and since ALJ Rising cites no other conflicting objective medical evidence so as to differentiate his rationale from that offered in *Martin*, the Court concludes that it was error to reject Drs. Qazi and Echeverria's medical opinions for the reasons proffered. This case shall be remanded to the Social Security Administration, where ALJ Rising is instructed to grant substantial, if not controlling, deference to Drs. Qazi and Echevrria's medical opinions, in accordance with 20 C.F.R. § 404.1527(d). If ALJ Rising chooses not to accord controlling deference to Drs. Qazi and Echeverria's medical opinions, he is ordered to provide a rationale for his decision that is consistent with the requirements of 20 C.F.R. § 404.1527(d), and with the principles expressed in this decision and in *Martin v. Commissioner, Social Security Administration*.

2.      **Substantial Evidence Review**

Since ALJ Rising improperly rejected the opinions of Drs. Qazi and Echeverria, remand is required for ALJ Rising to reconsider whether substantial evidence supports Simpson's benefits claim, in light of the substantial, and potentially controlling deference owed to the doctors' medical opinions. As such, the Court cannot determine at this stage of the proceedings

whether ALJ Rising's decision is or is not supported by substantial evidence, and cannot order or deny that disability benefits be awarded to Simpson, until further proceedings are undergone at the administrative level.

    **WHEREFORE,** for the reasons stated above,

    1.    The Plaintiff's Motion for Summary Judgment is GRANTED;

    2.    The Defendant's Motion for Summary Judgment is DENIED; and

    3.    This case is ordered REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

Dated this 18th day of January, 2008.

Signed By:
*Karen K. Caldwell*
United States District Judge